UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTINA P.,[1]

                Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

DECISION AND ORDER

24-CV-0351-MAV

---

## INTRODUCTION

In April 2024, Christina P. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Supplemental Security Income ("SSI"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 11 (Plaintiff); ECF No. 13 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 11] is denied. The Commissioner's motion [ECF No. 13] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

## I. Plaintiff's Applications

Plaintiff filed her application for SSI in September 2021, alleging a disability onset date of February 22, 2021. Administrative Record ("AR"), 241,[2] ECF No. 6. On her function report, Plaintiff stated that her illnesses, injuries, or conditions limited her ability to work because her "heart rate goes up, fingers go[ ] numb, [she is] moody, [and she experiences] pain in [her] body." AR at 263. In December 2021, the Commissioner found that Plaintiff was "not disabled," and her claim for SSI payments was denied. AR at 59–75. Plaintiff requested a reconsideration of the initial determination, and in April 2022 was again found "not disabled." AR at 76–95.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared by telephone on May 25, 2023, for a hearing before an Administrative Law Judge ("ALJ"). AR at 36. Her representative submitted a pre-hearing brief in which he summarized Plaintiff's circumstances:

> My client is a 35 year old woman who suffers from hereditary hemochromatosis (excess iron levels), sinus tachycardia with [high blood pressure], bilateral carp[a]l tunnel syndrome, migraine headaches, gastrointestinal reflux syndrome, bilateral hip bursitis and depression.
>
> . . . .
>
> Identified symptoms of her tachycardia include heart palpitations and shortness of breath with exertion.
>
> The [consultative medical examiner's report] indicates that her physical impairments interfere[ ] with physical activities and are compounded by tingling and numbness in her hands.

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

2

> [She had] carp[a]l tunnel release surgery in her right hand on 9/21/22.
>
> [She] continues to have persistent bilateral carp[a]l tunnel syndrome, causing difficulty with any tasks requiring the use of her hands.
>
> . . . . [T]he combination of physical and mental health limitations would cause [Plaintiff] to be off task a minimum of 20% of the [time], rendering her incapable of sustaining full time competitive employment.

AR at 295.

Plaintiff testified before the ALJ that her hemochromatosis caused her to watch everything she ate and to be careful with her medications; her tachycardia limited her ability to "walk around" because her heart rate would go up and she would start having pains in her chest, so she would have to stop and rest; and her carp[a]l tunnel syndrome prevented her from holding things in her hands, and made it difficult for her to use buttons and zippers. AR at 41–43. Additionally, Plaintiff stated that due to her depression, she didn't "really do anything" except stay at home and try to help her parents around the house. AR at 43.

The ALJ also heard testimony at the hearing from vocational expert Regina Malik (the "VE"). AR 45–52. When asked if there were jobs in the national economy that could be performed by a hypothetical claimant with the residual functional capacity[3] ("RFC") identical to that which Plaintiff was ultimately determined to have, the VE opined that the hypothetical claimant could perform work as a furniture rental consultant, a counter clerk, and a tanning salon attendant. AR at 48. Additionally, the VE testified that more than 10 percent of time off task and absences

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

3

of more than 1 day per month would be work preclusive. AR at 50.

## III. The ALJ's Decision

On June 22, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for SSI. AR at 29.

While a claimant for Disability Insurance Benefits is eligible for payment from the onset date of his or her disability, an SSI claimant will only receive payments beginning the month after his or her application date. *See* 20 C.F.R. § 416.501. Thus, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. AR at 20.

At step two, the ALJ determined that Plaintiff had the following severe impairments: tachycardia, hemochromatosis, and bilateral carpal tunnel syndrome. AR at 20–21. Additionally, the ALJ found that Plaintiff had a number of non-severe impairments such as a right foot bunion, a depressive disorder, and an anxiety

---

[4] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

disorder. AR at 21–23.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 ("the Listings"). AR at 24. In making this assessment, the ALJ considered the listing for tachycardia at Listing 4.02, the listing for hematological disorders at Listing 7.02, and the listing for peripheral neuropathy for Plaintiff's carpal tunnel syndrome at Listing 11.14, but found the requirements of the listings were not satisfied. AR at 24.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [C]an occasionally climb stairs and ramps; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, crawl, crouch, kneel, or balance, with ["]occasionally balance["] further defined as needing to avoid all narrow, slippery, and erratic moving surfaces; and occasionally handle and finger bilaterally.

AR at 24.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a home attendant. AR at 27. Nevertheless, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, namely a furniture rental clerk, a photo counter clerk, and a tanning salon attendant. AR at 28–29. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to SSI payments. AR at 29.

On February 16, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 1382c(a)(3)(A), a claimant is disabled and entitled to SSI if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 423(d) (setting forth the same definition of "disabled" for DIB eligibility).

Where an individual's application for SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)

(discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which

would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff maintains that the ALJ committed legal error in the evaluation of opinion evidence from Plaintiff's treating physician, Shan Dhanda, M.D. ECF No. 11-1. In response, the Commissioner maintains that the ALJ did not commit legal error, and that the RFC determination was based on substantial evidence. ECF No. 13-1. After a thorough review of the record, the Court agrees with the Commissioner that the ALJ applied the proper legal standards, and supported his findings with respect to Dr. Dhanda' opinion with substantial evidence.

**I. Dr. Dhanda's Opinions and the ALJ's Evaluation**

The ALJ's decision discusses two opinions from Dr. Dhanda: a "Medical Source Opinion Physical" questionnaire dated January 17, 2023, and a "Work Status Report" for the Department of Social Services in Genesee County dated March 3, 2023. AR at 1106–08. The primary focus of both the ALJ's opinion and the arguments in Plaintiff's brief is the questionnaire from January 2023.

In his January opinion, Dr. Dhanda, a family medicine physician at Batavia Primary Care, noted that he had seen Plaintiff for routine visits starting in July 2021, and that Plaintiff had diagnoses of hemochromatosis, depression, bilateral carpal tunnel syndrome, sinus tachycardia, and cervical radiculopathy.[5] AR at 1106. In

---

[5] By contrast, in the March 2023 opinion, the ALJ merely noted diagnoses of carpal tunnel syndrome, anxiety, and depression, and indicated that these conditions would render Plaintiff unable to work for

rating Plaintiff's capacity for work, Dr. Dhanda opined that Plaintiff's pain or other symptoms from her impairments would "frequently"[6] interfere with her attention and concentration. *Id.* He indicated she would be able to frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; and that she would be able to frequently twist, stoop, crouch, and squat, rarely climb ladders, and occasionally climb stairs. *Id.* Dr. Dhanda indicated that Plaintiff could sit for less than 2 hours in an 8-hour workday, and stand for less than 2 hours in an 8-hour workday, and that she could not sit or stand for more than 1 hour at a time. AR at 1107. He wrote that her carpal tunnel syndrome would limit her lifting, grabbing, and repetitive hand movements, and that she would need the ability to change positions between sitting and standing. *Id.*

In evaluating this opinion, the ALJ wrote, in pertinent part:

> [Dr. Dhanda], who has provided care to the claimant at Rochester Regional Health, has opined on a form dated January 17, 2023 that the claimant retains the capacity for less than sedentary work activity and that chronic pain would frequently interfere with concentration and functioning . . . . Dr. Dhanda has also checked of[f] a box on a form dated March 3, 2023 indicating that the claimant is "unable to work" . . . . These assessments are not persuasive for several reasons. As the doctor merely completed a checklist form, it is unclear how these conclusions were reached. It appears that the doctor simply circled the most limiting choices on this form, indicating the claimant had limitations that would increase the likelihood of claimant obtaining benefits but did not explain

---

between 7 and 11 months. AR at 1108.

[6] The questionnaire specified up front that for the purposes of the form, "'rarely' means 1% to 5% of an 8-hour working day; 'occasionally' means 6% to 33% of an 8-hour working day; 'frequently' means 34% to 66% of an 8-hour work day." AR at 1106. Thus, the terms used on the form and the terms commonly used by the Commissioner for the evaluation of work capability are similar. *See, e.g., Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *5–6 (S.S.A. 1983) ("'Occasionally' means occurring from very little up to one-third of the time . . . . 'Frequent' means occurring from one-third to two-thirds of the time."). In addition, at the hearing the ALJ in this case also defined "rare" as "only one to six percent of the workday." AR at 48.

why those limitations were chosen. In particular, Dr. Dhanda gave no examples of objective findings or other diagnostic evidence to support the conclusions . . . . Moreover, the doctor's opinion indicates that the claimant suffers from such chronic fatigue that it prevents her from being able to sit, stand or walk for more than 2 hours in an 8-hour work period, indicating that she is essentially bed bound by her impairments. This assessment is inconsistent with the doctor's own treatment notes, which as noted above show essentially normal physical examination findings, and report that she presents for treatment in no acute distress, including the contemporaneous treatment notes from 2023 during the date of service that the claimant requested these forms be completed and during which the claimant reportedly acknowledged that she was "uncertain as to condition under which she is applying for disability" and during which Dr. Dhanda noted that the claimant appeared to be comfortable and reported benign findings upon exam . . . . Additionally, although not cited by Dr. Dhanda, the claimant did have postural limitations during this period attributable to right foot bunion surgery that, as noted above, that are not expected to persist for a period of at least 12 months. Finally, the doctor's opinion is without substantial support from the other evidence of record which also reports benign physical examinations and is inconsistent with the claimant's own reported daily activities, which would be precluded by such severe restrictions.

AR at 26–27.

## II. Legal Principles

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any particular medical opinion in the record"). Rather, the regulations direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical

10

findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in his decision how he considered all of the factors, he must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." 20 C.F.R. § 416.920c(b)(2). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 416.920c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Nevertheless, the regulations make clear that the ALJ – and not the claimant's medical sources – is responsible for making the determination or decision about whether the claimant is

11

disabled. 20 C.F.R. § 416.920b(c)(3). Thus, it is within the discretion of the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

### III. Plaintiff's Arguments

In maintaining that the ALJ erred by selectively choosing evidence to consider in evaluating the supportability and consistency factors for Dr. Dhanda's opinion, Plaintiff presents several distinct arguments. Specifically, Plaintiff maintains that the ALJ improperly discounted Dr. Dhanda's opinion simply because it was in a "checklist form," failed to discuss treatment notes from Dr. Dhanda that supported Plaintiff's limitations, failed to discuss other record evidence consistent with Dr. Dhanda's opinion, mischaracterized Dr. Dhanda's opinion, and improperly relied on Plaintiff's activities of daily living. *Id.* The Court finds each of Plaintiff's arguments to be without merit.

#### A. Checklist Form

To be sure, the Second Circuit has made clear that it is error for the ALJ to discount a medical opinion "based on the naked fact that it was provided in a check-box form" *Colgan*, 22 F.4th at 361. However, the ALJ's finding that Dr. Dhanda's opinion was "not persuasive" in the present case was *not* based on the naked fact that it was provided in a check-box form, but rather for "several reasons," including that "it is unclear how these conclusions were reached." AR at 26. That is, the ALJ pointed out that in opining that Plaintiff's impairments caused work-preclusive limitations, Dr. Dhanda "did not explain why those limitations were chosen." *Id.*

12

One court within the Circuit has aptly stated, "[t]his critique is not just permitted under the new regulations, it is required—the ALJ must evaluate the supportability of medical opinions." *Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612 (TWD), 2022 WL 593554, at *13 (N.D.N.Y. Feb. 28, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). As discussed above, the supportability factor asks how well a medical source supported his opinion with objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1). Therefore, because the ALJ took issue not simply with the form of the opinion, but rather with its lack of supporting explanation, as well as with its inconsistency with Dr. Dhanda's treatment notes and with the record as a whole, the ALJ's reference to the "checklist" form of Dr. Dhanda's opinion does not warrant remand.

**B. Selective Choice of Evidence**

Similarly, the Court finds no merit in Plaintiff's arguments that the ALJ selectively chose evidence in assessing the supportability and consistency of Dr. Dhanda's opinion. In his decision, the ALJ wrote that Dr. Dhanda's assessment that Plaintiff could not sit, stand, or walk for more than 2 hours in an 8-hour work period "is inconsistent with the doctor's own treatment notes, which as noted above show essentially normal physical examination findings, and report that she presents for treatment in no acute distress, including the contemporaneous treatment notes from . . . the date of service that claimant requested [the opinion] forms be completed . . . ." AR at 27 (citing AR at 1113–14).

This assessment of the evidence finds ample support in the record. Before

13

evaluating the opinion evidence, the ALJ's RFC explanation discussed the objective and other medical evidence. He acknowledged Plaintiff's diagnoses of bilateral carpal tunnel syndrome and tachycardia, and that medical records documented mild grip strength deficits that limited Plaintiff to light work (AR at 26), but cited a string of instances in the record to support the statement that "she consistently presents for treatment in no acute distress and has benign findings upon physical exam." AR at 25. Among the treatment notes cited were several from visits with Dr. Dhanda. For instance, the ALJ cited an objective exam by Dr. Dhanda in December 2021 in which Plaintiff "appears comfortable," with heart rate in normal limits, regular heart rhythm, normal heart sounds, and tachycardia reported as improved; she had "slightly diminished strength" in her fifth fingers, but pinprick sensation was intact and there was no joint tenderness. AR at 588. Although the limitations from her carpal tunnel diagnosis became more evident in later visits, the results of objective exams recorded by Dr. Dhanda were similar on visits with Dr. Dhanda cited by the ALJ from January 2022 (AR at 887), March 2022 (AR at 882), June 2022 (AR at 1040), July 2022 (AR at 1036), and October 2022 (AR at 1028).

In addition to finding that Dr. Dhanda's opinion was not supported by an accompanying explanation or Dr. Dhanda's treatment notes, the ALJ also found that the opinion was "without substantial support from the other evidence of record which also reports benign physical examinations . . . ." AR at 27. For one, the ALJ discussed the report from consultative examiner Harbinder Toor, M.D., and stated that Dr. Toor's exam in November 2021 indicated that Plaintiff's "symptoms are well

14

accommodated within the range of light exertional work activities . . . ." AR at 26. Dr. Toor found upon examination that Plaintiff was in no acute distress, with normal gait and stance, needed no help changing for the exam or getting on and off the exam table, and could rise from the chair without difficulty. AR at 26 (discussing AR at 571–73). He also found that she had slightly decreased sensation in the tips of her fingers, but 5/5 grip strength bilaterally with hand and finger dexterity intact. *Id.* Consequently, Dr. Toor opined that "[s]ometimes sinus tachycardia or shortness of breath because of history of hemochromatosis can interfere with [Plaintiff's] physical activity. Sometimes she feels tingling and numbness in the hands. No other medical limitation [was] suggested by [the] evaluation." AR at 573.

Further, the ALJ also cited multiple objective examinations in the record from other sources that documented no acute distress and relatively benign findings. AR at 25–26. Specifically, the ALJ supported his RFC determination with citations to objective examinations reported in treatment notes from visits to Plaintiff's primary care provider (when she was seen by sources other than Dr. Dhanda), a heart institute, a physical rehabilitation unit, a hematology oncology clinic, an orthopedics clinic, and a neurology clinic, from September 2021, November 2021, January 2022, June 2022, July 2022, October 2022, November 2022, March 2023, and May 2023. *Id.* (citing AR at 371, 380, 591, 594, 917, 964–65, 970, 1010, 1014, 1051, 1053, 1111, 1168, 1189).

In arguing that the ALJ selectively chose this evidence, Plaintiff's brief identifies other record evidence both from Dr. Dhanda's treatment notes and from

15

other sources that she believes support Dr. Dhanda's opinion. Undoubtedly, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999). Nevertheless, the Second Circuit has repeatedly held that "'an ALJ is not required to discuss every piece of evidence submitted,' and a 'failure to cite specific evidence does not indicate that such evidence was not considered,' . . . so long as the ALJ's decision allows [the court] to conduct a meaningful review of the decision." *Woods v. Comm'r of Soc. Sec.*, No. 24-945-CV, 2025 WL 938639, at *3 (2d Cir. Mar. 26, 2025) (quoting, *Brault*, 683 F.3d at 448).

Here, the ALJ's RFC explanation included a thorough multi-page review of the evidence that acknowledges not only relatively benign findings, but also evidence of grip strength deficits and abnormal EMG studies that limit Plaintiff to light work with only occasional bilateral handling and fingering. AR at 26 (citing AR at 1017–49, 1187–91). The ALJ even incorporated this latter evidence by further limiting the RFC determinations by state medical consultants V. Baronos, M.D. and C. Krist, M.D. that had led to a denial of benefits to Plaintiff at both the initial level and upon reconsideration. AR at 26.

Consequently, the Court finds that the ALJ supported his RFC determination with substantial evidence, and that there is no merit in the allegation that the ALJ selectively chose evidence that weighed against a finding of disability. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [Commissioner's] determination, it must be upheld.")

### C. Characterization of Dr. Dhanda's Opinion

Likewise, the ALJ's characterization of Dr. Dhanda's opinion does not warrant remand. Plaintiff takes issue with the ALJ's statement that "[i]t appears the doctor simply circled the most limiting choices on this form . . . [in order to] increase the likelihood of claimant obtaining benefits" (AR at 26), and certainly Plaintiff makes a valid point that Dr. Dhanda did not, in fact, select the most limiting option on the form for each question on the opinion form. For instance, whereas the questionnaire provided an option by which Dr. Dhanda could have indicated that Plaintiff could only sit for zero minutes at any one time, he instead selected the option indicating that she could sit for up to one hour at a time. AR at 1107.

However, as discussed above, the ALJ's decision makes clear that his findings regarding Dr. Dhanda's opinion were not based on the ALJ's conclusory assertion that Dr. Dhanda appeared to select the most limiting options on the checklist opinion form. Rather, the ALJ's evaluation of Dr. Dhanda's opinion as "not persuasive" was based on Dr. Dhanda's failure to include any accompanying explanation for the significant limitations he opined Plaintiff to have, and the inconsistency of those limitations with both his treatment notes and other evidence in the record. As discussed at length above, the ALJ's RFC explanation and discussion of the supportability and consistency factors in evaluating Dr. Dhanda's opinion was sufficient for the Court to determine that the ALJ's finding that Dr. Dhanda's opinion was "not persuasive" was based upon substantial evidence. *See, e.g., Disotell v. Comm'r of Soc. Sec.*, No. 7:16-CV-0480, 2017 WL 3491851, at *7 (N.D.N.Y. Aug. 14,

2017) (finding the ALJ provided "ample rationale" to support her determination that the opinion was inconsistent with medical evidence in the record where, "elsewhere in the decision," the ALJ outlined specific treatment notes and other objective medical evidence which was inconsistent with the restrictive limitations opined) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### D. Reliance on Plaintiff's Activities of Daily Living

Lastly, the Court finds no merit in Plaintiff's argument regarding the ALJ's reliance on her activities of daily living. To begin with, the ALJ's evaluation of Dr. Dhanda's opinion was based principally on the supportability and consistency factors that he discussed at length with respect to Dr. Dhanda's opinion and his RFC determination in general.

Moreover, "the ALJ was entitled to consider Plaintiff's daily activities as part of the broader record of Plaintiff's functional limitations." *Briselida R. v. Comm'r of Soc. Sec.*, No. 522CV01290TJMML, 2023 WL 9600841, at *10 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 522CV1290FJSML, 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024) (citing, *inter alia*, *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020)). As the ALJ noted, Plaintiff reported to her consultative examiners "that she sustains personal grooming, prepares meals, cleans, does laundry, shops, managers her finances, watches television, socializes with family, and takes public transportation." AR at 27 (referencing AR at 567–73). These are permissible considerations under the regulations. *See* 20 C.F.R. § 416.929(c)(3)(i) (identifying "daily activities" as factors

18

relevant to the claimant's symptoms); *see also Grega v. Saul*, 816 F. App'x 580, 583 (2d Cir. 2020) (affirming an ALJ's evaluation of opinion evidence based, in part, on support from the claimant's "reported daily activities"); *Watson v. Comm'r of Soc. Sec.*, No. 20-CV-8447 (LJL), 2022 WL 3334701, at *11 (S.D.N.Y. Aug. 12, 2022) ("[A]n ALJ may rely upon a Plaintiff's reported activities of daily living in formulating an RFC if that determination is supported by evidence in the record.").

## CONCLUSION

For the foregoing reasons, Plaintiff Christina P.'s motion for judgment on the pleadings [ECF No. 11] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   September 10, 2025
         Rochester, New York

                                    /s/ Meredith Vacca
                                    HON. MEREDITH A. VACCA
                                    United States District Judge